UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

JODY LYNN FERGUSON, as Personal
Representative of the ESTATE OF MARK
ERWIN FERGUSON,

     Plaintiff,                   Case No. 1:16-cv-1099

v                              HON. PAUL L. MALONEY

MUSKEGON COUNTY, et al.,

     Defendants.

| | |
|---|---|
| Nicholas B. Roumel (P37056) | Allan C. Vander Laan (P33893) |
| Joseph X. Michaels (P79084) | Curt A. Benson (P38891) |
| NACHT & ROUMEL, P.C. | Cummings, McClorey, Davis & Acho |
| 101 N. Main Street-Suite 555 | Attorneys for Defendants |
| Ann Arbor MI 48104 | 2851 Charlevoix Dr., S.E. - Suite 327 |
| 734-663-7550 | Grand Rapids MI 49546 |
| nroumel@nachtlaw.com | 616-975-7470 |
| jmichaels@nachtlaw.com | avanderlaan@cmda-law.com |
| | cbenson@cmda-law.com |

**BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE
TO PLAINTIFF'S MOTION TO COMPEL**

STATEMENT OF FACTS

On October 29, 2014, Plaintiff Jody Ferguson's daughter, then a 15-year-old sophomore at Mona Shores High School, informed a detective with the Norton Shores Police Department that her step-father, Mark Ferguson, had been regularly raping her since she was about 11 years old.  She estimated that during the approximately 4 years of exploitation and abuse, her step-father had intercourse with her 30 to 40 times and that he had oral sex with her 20 to 30 times.  He penetrated her anally once. As a result of this information, the detective contacted the Plaintiff Jody Ferguson for an interview.

The next day, on October 30, 2014, the detective interviewed Plaintiff Jody Ferguson.  Jody acknowledged that she has known for months that her husband had been repeatedly raping her daughter. She understood the crimes involved vaginal and oral sex.  Jody told the detective she confronted her husband about these sex crimes and he admitted it was all true.  Alarmingly, Jody did not take any actions to protect her daughter from her dangerous and predatory husband, nor did she call the police to report the crimes.  She merely told her husband "if it ever happened again," she would divorce him. Predictably, Mark continued raping his step daughter after Jody's feeble "confrontation."

Later that day, the Norton Shores Police Department arrested Mark for criminal sexual conduct in the first and second degree.  He was lodged in the Muskegon County Jail.  Nineteen days later, he committed suicide in his cell.

## LITIGATION TO DATE

### A.  The State Court Action

On December 5, 2014, the Plaintiff sent a Freedom of Information Act (FOIA) request to the County of Muskegon demanding copies of documents generated by the County and individuals pertaining to Mr. Ferguson's short stay in the Muskegon County Jail.  The County responded on December 23, 2014.  Unsatisfied with the response, the Plaintiff waited until June 17, 2015, to file a FOIA Complaint in the Muskegon County Circuit Court.  (The case was reassigned to the Ottawa County Circuit Court to avoid conflicts of interest.)

Of course, the Circuit Court litigation led to expensive discovery.  The Defendant produced more documents, and the Plaintiff took several depositions before the matter was resolved.

B.  *The Federal Court Action*

On September 6, 2016, the Plaintiff filed her federal Civil Rights Complaint against the Defendants. The parties have engaged in the usual Discovery. While the Defendants have produce the majority of the information sought, the Plaintiff has filed a motion to compel certain information, mostly related to electronically-stored information.

THE RULES OF DISCOVERY IN FEDERAL COURT

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. The discovery must be proportional to the needs of the case. In considering proportionality, the Court must consider the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.  See Fed. R. Civ. P. 26(b)(1).

A determination of relevance is tied to applicable substantive law and then weighted against proportionality factors.  *Any information sought that is not relevant to a party's claim or defense is not discoverable, regardless of proportionality*.  The Court must additionally limit the frequency or extent or extent of discovery if it determines that:  "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the

party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). See generally, ***Tigle v. Hebert***, No CV 15-626-JWD-EWD, 2017 WL 2536584, at 4 (M.L. La. June 9, 2017.

THE PRESENT DISCOVERY DISPUTE

On page 8 of the Brief in Support of Plaintiff's Motion to Compel, the Plaintiff set forth four paragraphs describing her discovery dispute with Defendants:

- Plaintiff requested that each Individual Defendant "[i]dentify by brand and model (for example, Apple iPhone 6s) each cellular phone used by you from October 31, 2014 until the "present" and to state the phone number, provider, account number, date range the phone was used, and who currently possessed the phone. [Interrogatory 8];

- Plaintiff requested that each individual Defendant "identify each email account used by you from October 31, 2014 until the present and as to each account, "and state the precise email address used, the date ranges during which the email account was used, and if the email account as to no longer used why not." [Interrogatory 9];

- Plaintiff requested each individual defendant "Produce complete copy of the telephone and text message records for the months of November and December 2014 for the devices/cell phone numbers identified in response to Interrogatory No. 6." (Document Request 6];

- Plaintiff requested that each Defendant "produce a complete copy of any written communication, in any form including, but not limited to, memoranda, emails, text messages, letters, instant messages, and/or any written or electronic documentation of any type that in any way relates, references, or refers to Jody Ferguson or Mark Erwin Ferguson." [Document Request 4].

The Defendants will respond to each item seriatim.

00528259-1                                      4

PLAINTIFF'S BRIEF CONFUSES THE ISSUES

The Plaintiff's brief essentially treats all Defendants the same and generally claims that all of them have refused to produce relevant, non-privileged information.  By bundling the Defendants under a single argument, the Plaintiff unnecessarily confuses the issues.

The Plaintiff sued the County of Muskegon and five individual employees of the County.  Plaintiff's discovery was directed to the County and four of the five individual defendants.[1]  The four individuals responding to discovery are Jail Administrator Lt. Mark Burns, Sgt. Todd Gilchrist (who, on the day in question, was interim Jail Administrator), and two corrections officers, Deputy Tracy Longmire and Deputy Ivan Morris.

Lt. Mark Burns and Sgt. Gilchrist, as jail supervisors, have County-issued cellphones.  Deputies Longmire and Morris do not.

INTERROGATORIES 8 AND 9

**A. Deputies Longmire and Morris should not have to answer questions about their own personal electronic devices**

The Plaintiff sent an identical interrogatories to both Deputies Longmire and Morris.

Interrogatory 8 reads as follows:

> *Identify by brand and model (for example, Apple Iphone 6) each cellular phone used by you from October 31, 2014 until the present and as to each phone, state:*
>
> > *a.      The phone number(s) associated with each phone;*
> > *b.      The cellphone service providers;*
> > *c.      The account number for the cellphone service provider and the name or names on the account;*
> > *d.      The date ranges during which you used the phone;*

---

[1] The Plaintiff has not so far directed any discovery to Muskegon County Sheriff Dead Roesler.

> e. If you no longer use the phone, why not; and
>
> f. The name, address, and telephone number of the person who currently possesses the phone.

Deputies Longmire and Morris provided the same response:

> Defendant does not have a County-issued cellular phone. On October 31, 2014, she (he) had a personal cellular phone. Defendant had no communication about this incident with anyone while using her (his) personal cellular phone.
>
> Accordingly, Defendant objects to this interrogatory as seeking information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Interrogatory 9 reads as follows:

> Identify each email account used by you from October 31, 2014 until the present and as to each account, state:
>
> a. The precise email addressed used;
>
> b. The date ranges during which you used the email account;
>
> c. If you no longer use the email account, why not.

Deputies Longmire and Morris provided the same response:

> On October 31, 2014, if Defendant had any work-related email, she (he) would have used the Muskegon County email account.
>
> With respect to Defendant's personal email, she (he) neither sent nor received any email from anyone regarding this incident.
>
> Accordingly, to the extent that this interrogatory seeks information about Defendant's personal email, Defendant objects because the information it seeks is irrelevant, and not reasonably calculated to discovery of admissible evidence.

While "relevance" is construed broadly for discovery purposes, a party seeking discovery must show that the information sought is at least marginally probative. This,

the Plaintiff cannot do.  Both Deputies Longmire and Morris stated *under oath* that they had no communication on their personal cellphones or email regarding this incident.  Both their cellphones and email accounts are irrelevant to the Plaintiff's claims or the defenses asserted.

In an amusing and ironic twist, the Plaintiff herself, in response to Defendants' discovery, made the same objection and advanced the same argument Defendants advance here:  A party has no right to simply "rummage about" private electronic devices on the far flung hope she might find something relevant.

Specifically, in their January 5, 2017, Interrogatories, Defendants asked Plaintiff the following question:

> *Has Plaintiff or Plaintiff's decedent ever had a Facebook account?  If so, please produce all entries from January 1, 2012 to the present.  (Interrogatory 20)*

Plaintiff responded as follows:

> *Plaintiff objects to this interrogatory as harassing, overbroad and unduly burdensome, and seeking information that is not relevant or calculated to lead to the discovery of admissible evidence, nor proportional to the needs of the case.  See* **Tompkins v. Detroit Metro. Airport***, 278 F.R.D. 387, 388 (Ed.Mich. 2012.)*

The Defendants take the same position here.  **Tompkins** was a slip and fall case in which an airline customer sued an airport for personal injuries.  The airport sought the release of records from a "private" Facebook page that was accessible to a selected group of recipients, but not available for viewing by the general public.[2]  The Plaintiff refused to

---

[2] To the extent that there was once a distinction between a "Facebook page" and a "cellphone" or for that matter, "email," there is no longer a distinction. As the United States Supreme Court stated over 3 years ago, the term "cellphone" is itself misleading shorthand; many of these devices are in fact mini computers that also happen to have the capacity to be used as a telephone.  *See* ***Riley v. California***, 134 S. Ct. 2473, 2489, 189 L.Ed. 2nd 430 (2014).

produce the information, and the Defendant sought an order compelling its production. The Court sided with the Plaintiff:

> (T)he Defendants do not have a generalized right to rummage at will through information that Plaintiff has limited from public view.  Rather, consistent with Rule 26(b) and with the cases cited by both Plaintiff and Defendants, there must be a threshold showing that the requested information is reasonably calculated to lead to the discovery of admissible evidence.  Otherwise, the Defendants would be allowed to engage in the proverbial fishing expedition, in the hope that there *might* be something of relevance in Plaintiff's Facebook account.

***Tompkins v. Detroit Metro. Airport***, 278 F.R.D. 387, 388 (E.D. Mich. 2012).

Both Deputies Longmire and Morris have denied under oath using their personal cell phones and email accounts to communicate about this suicide. The Plaintiff has not, and cannot, make a threshold showing that the requested information is reasonably calculated to lead to the discovery of admissible evidence. It is, therefore, simply not discoverable.

### B. The "tapes" described in the Plaintiff's brief changes nothing

In her brief, in regard to Deputies Longmire and Morris' personal cellphone use, the Plaintiff states as follows:  "Moreover, this is not a fishing expedition or attempt to discovery personal information."  (sic)  In support of this contention, the Plaintiff makes reference to a video tape that "clearly shows that these phones were used regularly while on duty after the death of an inmate."

This is misleading.  As part of the discovery request, the Plaintiff sent to the County of Muskegon a series of photographs captured from a video tape showing various people near the suicide scene apparently using cellphones.  The Plaintiff asked the County to identify the individuals using the cellphones.  The County identified three officials using cellphones:  Undersheriff Dan Stout using a County-issued cellphone, Detective Brian

Harris using a County-issued cellphone, and Sergeant Todd Gilchrist using a County-issued cellphone.[3]

In other words, the video tape shows three high-level supervisors conducting official business using County issued cellphones. From there, the Plaintiff asks the Court to extrapolate that therefore lower-level guards, who were not even on the scene, were back at their posts making personal phone calls and drafting personal emails discussing Mr. Ferguson's suicide. This is an illogical leap. There is simply no evidence to contradict the sworn testimony of Deputies Longmire or Morris: they did not make phone calls or send emails from their personal electronic devices referencing this suicide. Any information concerning their personal electronic devices and email accounts are not discoverable.

### C. Lt. Burns' and Sgt Gilchrest's answers to interrogatories 8 and 9 are sufficient

In her motion, Plaintiff states that Lt. Burns' and Sgt Gilchrest's answer to Interrogatory 8 was somehow deficient. But both defendants answered the question in detail. The Plaintiff's brief says as much. Accordingly, Lt. Burns and Sgt Gilchrest assume that the Plaintiff has no issue with their answers to Interrogatory 8.

But with respect to Interrogatory 9, the Plaintiff complains that rather than produce a "complete copy of the telephone or text message records….," the County suggested that the Plaintiff subpoena Verizon Wireless.

The Sheriff Department does not maintain general cellphone or text message records. The records are kept by the provider. In an attempt to comply with the request,

---

[3] The County also identified an employee of ProMed Ambulance using a cellphone, but the County had no information on this individual.

Sheriff Administrators contacted Verizon Wireless, the County cellphone provider, and requested the documents. Verizon representatives informed the Department that Verizon will not produce the records without a subpoena. The Defendants conveyed that information to the Plaintiff.

INTERROGATORY 12

Interrogatory 12 was sent to all four individual Defendants.  Interrogatory 12 reads as follows:

> *Have you ever given a statement or interview of any kind, written or oral, to any investigator, inspector, medical examiner, or law enforcement officer, including employees of Muskegon County, regarding the death of Mark Irwin Ferguson?  If so, for each statement or interview, state the date and time of the statement or interview, the name, job title, employer and contact information of the individual(s) to which the statement or interview was given, the names and contact information of all persons present during the statement or interview, whether the statement or interview was documented or recorded in any fashion, and give a complete account of your statement or interview.  If the statement was recorded or written, produce a copy of your statement or interview.*

Sgt. Gilchrist answered as follows:

> *Yes, but not recorded.*

> *Defendant was interim jail administrator at the time of this incident (Jan. 2014 - Jan. 2017) and was, therefore involved with immediate actions including briefing detectives (do not recall who) as well as Sheriff Roesler, Undersheriff Dan Stout, Captain Michael Poulin, Detective Lt. James Christenson and the medical examiner investigator (I do not recall who.)*

> *Defendant does not recall details of the statements made.*

The remaining three Defendants all gave the same answer:   *"Other than legal counsel, no."*

The Defendants stand by their answer.

It is frankly not clear why the Plaintiff takes issue with these answers. In her brief, the Plaintiff makes passing reference to Jail Incident Supplemental Reports submitted by most of the deputies working in the jail at the time Mr. Ferguson died, including Longmire, Morris and Gilchrist. The Defendants voluntarily produced copies of these statements to Plaintiff's counsel.

INTERROGATORIES 14 AND 15

Interrogatory 14 reads as follows*:  "Identify all actions you have taken to preserve or retain email, text messages or phone records related to Mark Irwin Ferguson and/or his death."*

Deputies Longmire and Morris gave the same answer:  *"Defendant neither sent nor received any email, text messages or telephone calls related to Mark Irwin Ferguson and/or his death."*

The Plaintiff calls this answer "deficient," but offers no explanation.  It is impossible to "take action" to preserve information that the party knows does not exist.  Seeking an order to compel an answer to an interrogatory that is plainly unanswerable is groundless.

Sgt. Gilchrist answered the question as follows:

> *Defendant emails have not been deleted since the dates in question.  Defendant however does not recall any emails, text messages sent regarding this incident.  Defendant may have called other administrative staff (Sheriff, Undersheriff, Captain, or Detective Lieutenant) immediately following the response to this incident, but do not recall.*

The Plaintiff declares this answer "non-responsive and evasive."  But the Plaintiff makes no attempt to explain how this answer is non-responsive and evasive.

Interrogatory 15 states as follows:

> *State whether any non-attorney individual, agent, or employee of Muskegon County ever instructed you to preserve or retain electronically stored information related to Mr. Ferguson and/or his death.  For each instruction state the name and job title of the person who instructed you, the date on which the instruction was made, who else was present, and what specific actions you were instructed to date.*

It is important to realize that much of this was discussed during the State court action over the Freedom of Information Act request.  In a letter dated December 5, 2014, Plaintiff's counsel sent a letter to Sheriff Roesler entitled "Mark Irwin Ferguson Preservation Letter."  The letter was a standard "litigation-hold" letter.  During the State court FOIA litigation, it was disclosed that Sheriff Roesler forwarded the letter to Sgt. Gilchrist who took the action described in his answers to the current interrogatories.  Also, on December 19, 2014, counsel for Muskegon County forwarded a copy of the letter to Mr. Mark Hansen of Information Technology in the Central Services Building for the County of Muskegon.  Counsel instructed Mr. Hansen to comply with the demands set forth in the litigation-hold letter.

Meanwhile, Sgt. Gilchrist answered the interrogatory as follows:

> *After this incident Defendant, as Jail Administrator, saved video footage immediately leading up to and after the incident. This was discussed with, but instructed by, Sheriff Dean Roesler.*
>
> *Defendant was involved in a FOIA request for this incident.  A preservation request was received (unknown dates) to preserve data from emails and cellphones, however, to Defendant's knowledge, none existed.*

Sgt. Gilchrist's answer, coupled with the information disclosed in the State court FOIA case, provides all the information the Plaintiff seeks.  Once again, the Plaintiff has not specifically identified any particular problem with Sgt. Gilchrist's answer.

In answer Interrogatory 15, Deputies Longmier and Morris refer to their answer to Interrogatory 14.  The Plaintiff complains that, in effect, Deputies Longmier and Morris are answering an entirely different question.

The argument is disingenuous.  Boht Deputies Longmier and Morris stated in their answer to Interrogatory 9 that, "If Defendant had any work-related email, she (he) would have used the Muskegon County email account."  (Though both also answered that they did not send any emails regarding Mr. Ferguson's death.)  As corporate counsel sent the litigation-hold letter to the IT Department which has the ability to preserve any email, including email sent from Deputies Longmier and Morris, there would be no point in giving Deputies Longmier and Morris any specific instruction about preserving email.

CONCLUSION

The Defendants have fulfilled their obligations under the discovery rules.

Respectfully submitted,

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.

/s/ Curt A. Benson
Allan C. Vander Laan (P33893)
Curt A. Benson (P38891)
Attorneys for Defendants
Cummings, McClorey, Davis & Acho. P.L.C.
2851 Charlevoix Drive, SE, Ste. 327
Grand Rapids, MI 49546
616/975-7470

Dated: July 21, 2017